**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| QUICKMED DIAGNOSTIC, INC.,<br>Plaintiff,<br>v.<br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; BLUE CROSS OF CALIFORNIA; DOES 1-300,<br>Defendants. | Case No. 25-cv-2902-BAS-JAC<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 16)** |

During the COVID-19 pandemic, Plaintiff Quickmed Diagnostic, Inc. administered numerous COVID-19 diagnostic tests to individuals with ERISA-governed benefit plans or Medicare Advantage ("MA") plans.[1] An out-of-network provider, Plaintiff relied on

[1] The Employee Retirement Income Security Act of 1974 ("ERISA") provides federal protections for private employer-sponsored health plans. An employer-sponsored health plan regulated by ERISA can be either (a) "self-funded," where the employer pays claims from its own assets and bears the financial risk, typically hiring a third-party administrator to process claims; or (b) "fully-insured," where the employer pays a premium to a private insurance company, which bears the risk and both administers and pays claims.

Title XVIII of the Social Security Act, commonly known as the Medicare Act, offers the elderly and disabled federally subsidized health insurance coverage through the option of Medicare Advantage ("MA") plans; MA plans are administered by private insurance companies.

federal laws—in particular, the FFCRA and CARES Act[2]—for reimbursement of its testing services. But insurers allegedly underpaid or failed to pay many of Plaintiff's reimbursement claims. Plaintiff now sues numerous defendants—entities that administered the plans and the plans themselves—in related cases before this Court.[3]

The Ninth Circuit has foreclosed a private right of action under the FFCRA and CARES Act. Plaintiff thus sues under ERISA, as an assignee of the plan beneficiaries. Apparently, Plaintiff relies on the substantive law of the FFCRA and CARES Act while seeking standing through ERISA.

In substance, the FFCRA required health plans and health insurance issuers to cover COVID-19 testing services, and the CARES Act specified the reimbursement rate for such services, which included the provider's publicly listed cash price. As relief, Plaintiff seeks to recover the publicly listed cash price for its diagnostic testing services that were allegedly unpaid or underpaid by Defendants for ERISA-governed benefit plans. And, under state law theories, Plaintiff seeks to recover reimbursement for its services to MA plan members.

Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint. (ECF No. 16.) The motion to dismiss is fully briefed. (ECF Nos. 16, 22, 26.) The Court finds Defendants' motion suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). Upon review, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

---

[2] In response to the COVID-19 pandemic, Congress passed two statutes: the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

[3] The related cases before this Court are: *Quickmed Diagnostic, Inc. v. Cigna Health Corp.*, No. 25-cv-03114-BAS-JAC (S.D. Cal. filed Nov. 12, 2025); *Quickmed Diagnostic, Inc. v. Aetna Health and Life Ins. Co.*, No. 25-cv-03131-BAS-JAC (S.D. Cal. filed Nov. 12, 2025); and *Quickmed Diagnostic, Inc. v. United Healthcare Servs., Inc.*, No. 25-cv-03132-BAS-JAC (S.D. Cal. filed Nov. 12, 2025).

# I. BACKGROUND

## A. Procedural Background

In July 2025, Plaintiff filed an action in San Diego Superior Court against Defendants. (Felahi Decl. ¶ 2, ECF No. 16-1.) Plaintiff had informally provided a spreadsheet of over 500,000 outstanding claims; some of those claims involved individuals covered by ERISA and/or Medicare plans. (*Id.* ¶¶ 3, 6.) Defendants sought removal to federal court, in part given ERISA's broad preemption power. (*Id.* ¶ 6.) In October 2025, the case was removed to the Honorable Roger T. Benitez then transferred to the Honorable Anthony J. Battaglia. *Quickmed Diagnostic, Inc. v. Anthem Blue Cross Life and Health Ins. Co.*, No. 25-cv-02256-AJB-KSC (S.D. Cal.) (the "First Federal Action").

Once in federal court, Plaintiff provided an amended complaint on September 29, 2025. (First Federal Action, ECF No. 6.) The same day, Plaintiff filed a motion to remand, arguing that its complaint did not raise federal statutory claims. (First Federal Action, ECF No. 7 at 2 ("The Complaint asserted causes of action based solely on state law. It does not include a single cause of action under federal law, nor does it even mention ERISA or Medicare Advantage anywhere in the pleading.").)

Before Plaintiff's motion to remand could be fully briefed, the parties filed a joint motion to remand. (First Federal Action, ECF No. 9.) The joint motion stipulates: on "October 1, 2025, the Parties confirmed, pursuant to Plaintiff's Motion for Remand and Amended Complaint, that Plaintiff does not seek recovery in the underlying action based on (i) assignments of benefits from beneficiaries of a self-funded employee benefit plan subject to the Employee Retirement Income Security Act ("ERISA"), or (ii) recovery based on claims for services provided to enrollees of Medicare Advantage plans administered under federal authority." (*Id.*) Apparently, Plaintiff "Quickmed had always intended to file a separate federal lawsuit for claims where it was seeking relief directly under ERISA as an assignee of benefits[.]" (First Federal Action, ECF No. 7 at 2.)

Judge Battaglia granted the joint motion to remand on October 14, 2025. (First Federal Action, ECF No. 10.) The case was closed. (*Id.*) Then, on October 27, 2025,

Plaintiff refiled in federal court, alleging its federal statutory claims along with state law claims before this Court. (ECF No. 1.)[4]

**B. Factual Background**

Plaintiff Quickmed Diagnostic, Inc. operated a diagnostic laboratory during the COVID-19 pandemic. (Compl. ¶ 1, ECF No. 1.) Plaintiff administered COVID-19 tests to individuals covered by ERISA-governed plans or MA plans. (Compl. ¶¶ 2, 3.) Plaintiff required an assignment of benefits before rendering testing services. (Compl. ¶ 33.)

Plaintiff now sues the plans, insurers, and claims administrators in related cases before this Court for failing to properly reimburse its claims. (Compl. ¶¶ 4, 5.) Specifically, Plaintiff alleges that many claims went unpaid or underpaid without adequate explanation. (Compl. ¶¶ 54–56.) For other claims, Defendants paid Plaintiff the minimum lawful amount or a fraction of Plaintiff's publicly listed cash price. (Compl. ¶ 54.) Further, Plaintiff alleges that it appealed all unpaid and underpaid claims but received no adequate explanation or relief. (Compl. ¶¶ 55, 57, 67–71.)

In this action, Plaintiff sues Anthem Blue Cross Life and Health Insurance Company and Blue Cross of California, the latter allegedly a wholly-owned or controlled subsidiary and/or affiliate of the former (collectively, "Defendants").[5] (Compl. ¶¶ 11–14.) Plaintiff pleads that Defendants were either (a) insurers for fully-insured plans, or (b) claims administrators for self-funded plans or MA plans. (Compl. ¶¶ 11–14, 17, 27–28.) Plaintiff

---

[4] Plaintiff does not acknowledge the pertinent procedural history in its briefing or the complaint. (ECF Nos. 1, 22.) And in the civil cover sheet filed in the present action, Plaintiff did not mention the related, previous case dismissed barely two weeks prior; Plaintiff left the section completely blank. (ECF No. 1-1.) The Court is unclear as to the procedural strategy at play.

Under Civil Local Rule 40.1(f), if counsel has reason to believe that a pending action is related to another pending action in the Southern District or any other federal or state court (whether pending, dismissed, or otherwise terminated), counsel must promptly file and serve on all known parties a notice of related case, providing a brief statement of their relationship and whether assignment to a single district judge would likely save judicial effort and promote other economies. Here, neither party filed a notice of related cases pursuant to the local rule. The Court notes the failure of both parties, especially Plaintiff, to properly acknowledge this procedural history on the docket.

[5] The parties submitted a joint motion to dismiss Defendant Elevance Health Inc. from the action that the Court granted. (ECF Nos. 21, 24.)

alleges that Defendants exercised sufficient control and discretion over the claims at issue to render them proper defendants. (Compl. ¶¶ 14–17, 35.) In addition to named Defendants, Plaintiff brings claims against several groups of Doe Defendants; in doing so, Plaintiff sues the plans themselves, which were allegedly contractually obligated to pay the benefits at issue.[6] (Compl. ¶ 50.)

Plaintiff identifies five plans in the complaint as exemplars. (Compl. ¶ 70.) And Plaintiff seeks reimbursement for claims administered from February 11, 2021, through March 16, 2023. (Compl. ¶ 50.)

Plaintiff alleges that it is an out-of-network provider and thus has no directly negotiated rate with Defendants for the COVID-19 tests at issue.[7] (Compl. ¶¶ 45, 51.) This distinction matters because Plaintiff states that federal law—the FFCRA and CARES Act—mandated coverage of out-of-network COVID-19 testing and provided instructions on how to calculate the rate for testing, given the circumstances of the pandemic. (Compl. ¶¶ 22, 45.)

Section 6001 of the FFCRA required health plans and health insurance issuers—which Plaintiff alleges Defendants are—to cover COVID-19 testing and "items and services" related to testing without cost-sharing, prior authorization, or other medical management requirements during the pandemic. (Compl. ¶¶ 41–43.) Section 3202(a) of the CARES Act, which amended the FFCRA, separately established the applicable reimbursement rate for COVID-19 testing, requiring health plans and health insurance

---

[6] Patients are enrolled in plans; and plans are insured or administered by Defendants. Does 1–100 are alleged to be the ERISA-governed employee welfare benefit plans and group health plans; Does 101–200 are alleged to be Medicare Advantage Organizations or downstream Medicare Advantage entities; Does 201–300 are unidentified parties alleged to be agents or employees of a plan or an administrator. (Compl. ¶¶ 18–21, ECF No. 1.)

[7] The difference between in-network and out-of-network providers can be explained as follows: "In-network providers agree to render health care services to plan beneficiaries at a discounted rate, in exchange for greater access to the plan's subscribers. Out-of-network providers do not agree to provide services at any set rate, and so do not receive the same level of facilitated access to plan members." *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597, 599 (9th Cir. 2024).

issuers to pay providers the negotiated rate or, absent one, the provider's publicly listed cash price. (Compl. ¶ 44.)

Plaintiff alleges that it posted the pricing for its tests on its website, reflecting a $350.00 charge for a PCR test, $100.00 for high-throughput testing, and $50.00 for sample collection. (Compl. ¶¶ 49, 52.) Plaintiff seeks reimbursement at its publicly listed cash price. (Compl. ¶ 51.)

For MA plans, Plaintiff alleges that they were required to cover diagnostic testing pursuant to federal law, where federal law includes the Medicare Act, the FFCRA and CARES Act, and other regulatory and sub-regulatory guidance issued by the agency Centers for Medicare & Medicaid Services ("CMS"), which regulates MA plans. (Compl. ¶ 38.) Defendants were allegedly required to reimburse Plaintiff for its testing services in accordance with federal law and CMS guidance. (*Id.*)

The rate an MA plan must pay an out-of-network provider is governed by 42 C.F.R. § 422.214, which requires MA organizations to reimburse non-contracted providers at the rate original Medicare would have paid for the same service. (Compl. ¶¶ 36, 40.) And original Medicare covers diagnostic tests deemed medically necessary; COVID-19 tests fell within the category of necessary. (Compl. ¶ 40.)

Plaintiff asserts federal question jurisdiction under 29 U.S.C. § 1001 and 28 U.S.C. § 1442(a)(1); Plaintiff also invokes 28 U.S.C. § 1367(a) for supplemental jurisdiction of the state-law claims. Plaintiff's complaint alleges fourteen (14) causes of action, which includes a few federal statutory claims and an assortment of state law actions:

1. For Benefits Under 29 U.S.C. § 1132(a)(1)(B) Against Administrator Defendants, ERISA Plan Defendants, and/or General Doe Defendants;
2. For Breach of Fiduciary Duty Against Administrator Defendants, ERISA Plan Defendants, and/or General Doe Defendants;
3. Violation of the FFCRA and CARES Act Against All Defendants;
4. Violation of California's Unfair Competition Law ("UCL") – California Business and Professions Code § 17200 *et seq*. Against All Defendants;

5. Money Had and Received Against All Defendants;
6. Open Book Account Against All Defendants;
7. Account Stated Against All Defendants;
8. Promissory Estoppel Against All Defendants;
9. Unjust Enrichment Against All Defendants;
10. Breach of Implied-In-Law Contract Against All Defendants;
11. Breach of Implied-In-Fact Contract Against All Defendants;
12. Quantum Meruit Against All Defendants;
13. Violation of § 1342.2 of the California Health and Safety Code / California Insurance Code § 10110.7 Against All Defendants;
14. Declaratory Relief – California Code of Civil Procedure § 1060 Against All Defendants.

Along with other relief, Plaintiff seeks: (1) an order compelling Defendants to pay for the services provided to individuals in accordance with ERISA and the terms of the applicable ERISA plans; and (2) to the extent any of the ERISA plans prohibits the assignment of the patient's benefits to Quickmed, for an order compelling Defendants to pay Plaintiff the reasonable value of the services provided to each patient. (Prayer for Relief ¶¶ 1–2, ECF No. 1.)

Defendants' motion seeks to dismiss all claims with prejudice or, in the alternative, to strike parts of the complaint.

## II. LEGAL STANDARDS

### A. FRCP 12(b)(1) – Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute[.]" *Id.*

Under Rule 12(b)(1), one can move to dismiss for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A defendant may challenge the plaintiff's jurisdictional allegations through either a facial or factual attack. *See Leite v. Crane Co.*, 749 F.3d 1117,

1121 (9th Cir. 2014). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

**B. FRCP 8(a) and 12(b)(6) – Failure to State a Claim**

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests that standard by seeking dismissal for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While legal conclusions may provide the framework of a complaint, "they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—in other words, enough to render the claim plausible. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570).

In ruling on a motion to dismiss, the court accepts the complaint's factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). The court may not look beyond the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

If dismissal is warranted, the court considers whether to grant leave to amend. Leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). At the same time, "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011).

**C. FRCP 12(f) – Motion to Strike**

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Sidney-Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983).

"Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice[.]" *Neilson v. Union Bank of Cal*., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). "[The] motion . . . should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (internal citations omitted). And if the Court holds "any doubt," it "should deny the motion." *Id.*

**III. ANALYSIS**

The Court first addresses the federal claims under ERISA, including whether Plaintiff has standing to assert its claims and whether Plaintiff was required to exhaust its administrative remedies. The Court then considers whether ERISA preempts Plaintiff's state-law claims. Next, the Court examines whether Plaintiff was required to exhaust administrative remedies for its claims against MA plans. Finally, the Court turns to Plaintiff's declaratory relief claim and Defendants' request to strike.

**A. Claims Under ERISA**

The Employee Retirement Income Security Act of 1974 sets standards in private industry for employer-sponsored health benefit plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)). Importantly, ERISA gives members of health plans the right to sue insurers and administrators for plan benefits and breaches of fiduciary duty. 29 U.S.C. § 1132(a)(1), (3); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). ERISA thus effectuates "a careful balancing of the need for prompt and

fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life*, 481 U.S. at 54.

**1. Standing**

ERISA enumerates which parties possess a right of action "to recover benefits due under the terms of a plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (citation modified); *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1247 (9th Cir. 2000). Plaintiff does not fall within an enumerated category in the statute. But the Ninth Circuit has repeatedly recognized derivative standing through assignment; in short, members of health plans can assign their benefits to healthcare providers. *See S. Coast Specialty Surgery Ctr., Inc. v. Blue Cross of Cal.*, 90 F.4th 953, 958 (9th Cir. 2024) ("ERISA [] permits the assignment of health and welfare benefits to a healthcare provider, and it allows such a provider to bring derivative claims on behalf of its patients."); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) ("As a non-participant health care provider, Spinedex cannot bring claims for benefits on its own behalf. It must do so derivatively, relying on its patients' assignments of their benefits claims."); *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1377 (9th Cir. 1986) ("ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider.").

Here, Plaintiff plausibly pleads derivative standing through an assignment. *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1130 (C.D. Cal. 2015) (interpreting the assignment clause at the motion to dismiss stage, where the plaintiff provided the text of the assignment). The assignment language states, in relevant part: "I understand that as a courtesy, Laboratory and/or its authorized agents will make every reasonable effort to obtain insurance reimbursement for ordered tests. I understand that I am making an assignment of my insurance plan benefits to Laboratory and/or its authorized agents." (Compl. ¶ 64.)

But Defendants highlight that several plans—identified through the informally produced spreadsheet during state court proceedings—contain anti-assignment language. Anti-assignment clauses in ERISA plans are valid and enforceable. *See Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991). The Court first addresses whether it will consider the plans' anti-assignment language offered by Defendants. Second, the Court will briefly turn to the anti-assignment provisions themselves.

Defendants have provided numerous plan documents and ask the Court to consider them as incorporated by reference into the complaint. (Loppnow Decl. at 7, ECF No. 16-2.) At the motion to dismiss stage, the Court lacks the benefit of discovery and is limited in what it can consider without converting the motion to dismiss into a motion for summary judgment. *See* Fed R. Civ. Proc. 12(d).

The incorporation by reference doctrine permits a court to look beyond the pleadings without converting a Rule 12(b)(6) motion into one for summary judgment. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Incorporation by reference is appropriate when: (1) a plaintiff's claim depends on a document or the contents of the document have been alleged in the complaint, (2) the document is not attached to the complaint but the defendant attaches it to his moving papers, and (3) the parties do not dispute the authenticity of the document. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). If a document is incorporated by reference, the court may treat it as if it were part of the complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Plaintiff identifies five plans as exemplars in the complaint, but Defendants do not submit the language of those plans. Rather, Defendants submit different plans, identified through an informally produced spreadsheet during the state-court proceedings. Because the complaint neither refers to nor relies upon the plans Defendants now offer, those plans cannot be treated as part of the complaint through incorporation by reference. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002–03 (9th Cir. 2018) (explaining that incorporation is proper only where the complaint "refers extensively to the document or the document forms the basis of the claim," and cautioning that a defendant may not use

unmentioned documents merely to create a defense "to the well-pled allegations in the complaint"). The Court therefore declines to consider the proffered plans and evaluates the Rule 12(b)(6) motion on the allegations in the complaint. On those allegations, Plaintiff adequately pleads derivative standing based on its assignments.

Further, even if the Court were to consider the anti-assignment clauses identified, the Court cannot determine the validity and applicability of the clauses at this stage. *See Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 440–41 (9th Cir. 2020) (discussing that a plan administrator "waive[s] the right to enforce an anti-assignment provision" if the administrator is aware of the assignment yet fails to "raise the anti-assignment provision as a basis to deny benefits" during claim processing). Exercising its discretion, the Court declines to consider the anti-assignment clauses and thereby convert the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007).

In summary, the Court does not decide whether an anti-assignment clause applies or whether Defendants waived the right to enforce an anti-assignment clause on this undeveloped record. *See, e.g.*, *Martin Luther King, Jr. Cmty. Hosp. v. Cmty. Ins. Co.*, No. 2:16-cv-03722-ODW (RAOx), 2017 WL 8186738, at *4 (C.D. Cal. Mar. 21, 2017) ("As the language of the anti-assignment provision is susceptible to two different interpretations, the parties' rights and obligations thereunder cannot be resolved at the pleading stage."). Therefore, the Court denies the motion to dismiss based on standing.

**2. Exhaustion**

Although "ERISA does not require a participant or beneficiary to exhaust administrative remedies prior to seeking judicial review," the Ninth Circuit has "recognized a prudential exhaustion requirement." *McAfee v. Metro. Life Ins. Co.*, 368 F. App'x 771, 772 (9th Cir. 2010); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008). If a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6). *See Norris v. Mazzola*, No. 15-

cv-04962-JSC, 2016 WL 1588345, at *6 (N.D. Cal. Apr. 20, 2016) (rejecting a failure to exhaust argument relying on the face of the complaint).

Here, Plaintiff's complaint sufficiently alleges administrative exhaustion. (Compl. ¶¶ 54–57, 67–71.) Plaintiff alleges it filed claims for benefits, many claims went unpaid, and it appealed all unpaid and underpaid claims but received no adequate explanation or relief from Defendants. (*Id.*) Although Defendants argue that Plaintiff is required to specifically identify at least one plan that has been exhausted, the Court cannot find such a requirement in the case law. And Plaintiff alleges that Defendants failed to follow reasonable claims procedures; in other words, Plaintiff states that exhaustion was inadequate or futile. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1088 (9th Cir. 2012) (holding that the district court abused its discretion by dismissing the plaintiff's denial-of-benefits claim for a failure to exhaust administrative remedies because, as alleged, the defendant did not act consistent with reasonable claims procedures). Therefore, the Court denies Defendants' motion to dismiss the ERISA claim for failure to exhaust administrative remedies.

**3. Claim for Benefits Under ERISA § 502(a)(1)(B)**

Plaintiff seeks to recover benefits allegedly due to it under the ERISA plans. As a threshold matter, the language of the assignment clause contemplates assignment of a claim to recover benefits.

To satisfy pleading standards, a plaintiff must allege not only the existence of an ERISA plan but also identify "the provisions of the plan that entitle [it] to benefits." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020) (quotation omitted).

Here, Plaintiff does not identify the provisions of the plan. Plaintiff does, however, identify two emergency federal statutes that allegedly entitle it to benefits. This case thus presents a situation where Congress provided the relevant provisions that entitle Plaintiff to benefits under the plans. *See, e.g.*, *Genesis Lab'y Mgmt. LLC v. United Health Grp., Inc.*, No. 21cv12057 (EP) (JSA), 2023 WL 2387400, at *5 (D.N.J. Mar. 6, 2023) ("[T]his Court finds that Section 6001 of the FFCRA and Section 3202 of the CARES Act must be

considered together with ERISA because they impose legal requirements on ERISA plans."). Congress has imposed, through legislation, substantive coverage requirements on ERISA governed plans in the past. When Congress enacted the Affordable Care Act, for example, it amended ERISA to incorporate various provisions; specifically, Congress required ERISA governed plans to cover pre-existing conditions. *See, e.g.*, *Iwata v. Intel Corp.*, 349 F. Supp. 2d 135, 152 (D. Mass. 2004).

Without deciding whether Plaintiff can recover reimbursements under the substantive terms of the FFCRA or CARES Act, the Court finds Plaintiff's allegations sufficient to state a plausible claim. The cited federal laws show Congress required Defendants to cover diagnostic testing for ERISA-governed plans. And the CARES Act specified how the payment should be calculated. Plaintiff's claims are not unmoored, broadly stating it should be reimbursed; instead, Plaintiff has pointed to specific federal law that sets up a reimbursement structure for a required plan service. Plaintiff has stated a plausible claim. *Cf.*, *Fortitude Surgery Ctr. LLC v. Aetna Health Inc.*, No. CV-24-02650-PHX-KML, 2025 WL 1432906, at *3 (D. Ariz. May 19, 2025) ("While Fortitude was not required to 'recite every relevant term of every relevant plan,' it needed to 'do more than broadly allege . . . [a] generalized obligation' for Aetna to provide payment." (citation omitted)).

And, at the motion to dismiss stage, the Court cannot say that seeking to enforce the FFCRA and CARES Act through ERISA plans is legally inappropriate. For example, the district court in *Saloojas* granted leave to amend to allow the plaintiff to assert substantive CARES Act claims under ERISA. *See Saloojas, Inc. v. Aetna Health of Cal., Inc.*, No. 22-cv-01696-JSC, 2022 WL 2267786, at *6 (N.D. Cal. June 23, 2022) ("Although amendment of a CARES Act claim would be futile, Plaintiff argues that it could amend its complaint to state a claim under ERISA. Without the benefit of full briefing, the Court cannot conclude that such claim would fail as a matter of law."), *aff'd*, 80 F.4th 1011 (9th Cir. 2023). Plaintiff's claim is not asserting a statutory right but seeking to recover benefits under ERISA-governed benefit plans that were affected by statute. *See, e.g.*, *Diaz v. United*

*Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995) (seeking to enforce the statutory requirements of the Consolidated Omnibus Budget Reconciliation Act (COBRA) under an ERISA plan); *cf. Risby v. Nielsen*, 768 F. App'x 607 (9th Cir. 2019) ("The Supreme Court has clarified that a claim asserting a statutory right may be brought only to the extent that the statute grants a private right of action." (emphasis in original) (citing *Ziglar v. Abbasi*, 582 U.S. 120, (2017))).

Accordingly, the Court denies Defendants' motion to dismiss the claim for benefits under ERISA § 502(a)(1)(B).

**4. Claim for Breach of Fiduciary Duty Under ERISA § 502(a)(2)**

Plaintiff also asserts that Defendants breached their fiduciary duty obligations under ERISA. Those who control plans have fiduciary responsibilities. *See Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996) (noting that ERISA limits the scope of fiduciary activity to discretionary acts of plan "management" and "administration"); *see also Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1025–26 (9th Cir. 2021) ("An ERISA fiduciary must discharge its duties solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries[.]" (citation modified)). But Plaintiff has not adequately pled derivative standing through assignment for a fiduciary duty claim.

The Ninth Circuit has instructed that courts should rely on the language of the assignment as well as context to determine whether patients intended to assign the right to assert a breach of fiduciary duty claim. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014) ("The Assignment nowhere indicates that, by executing the assignment, patients were assigning to Spinedex rights to bring claims for breach of fiduciary duty."); *Britton v. Co–op Banking Grp.*, 4 F.3d 742, 746 (9th Cir.1993) ("[I]t is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person. . .." (quoting Restatement (Second) of Contracts § 324 (1981))).

Here, Plaintiff has sufficiently alleged Defendants' control over the administration of benefits under the plans. (Compl. ¶¶ 15–16 (a)-(j), 35.) But the assignment clause's limited scope precludes a breach of fiduciary duty claim. Once more, the relevant assignment language reads: "I understand that as a courtesy, Laboratory and/or its authorized agents will make every reasonable effort to obtain insurance reimbursement for ordered tests. I understand that I am making an assignment of my insurance plan benefits to Laboratory and/or its authorized agents." (Compl. ¶ 64.) Relying on the language and context, the assignment language restricts itself to reimbursement of benefits, nothing more. *Cf. Infoneuro Grp. v. Aetna Life Ins. Co.*, No. 2:16-cv-05083-AB (JCx), 2019 WL 3006549, at *2, *7 (C.D. Cal. May 3, 2019), *aff'd*, No. 22-55239, 2023 WL 2052781 (9th Cir. Feb. 16, 2023) (finding a proper assignment of fiduciary duty where the heading specified assignment of fiduciary duty and the form began, "In addition to the assignment of the medical benefits and/or insurance reimbursement above, I also assign and/or convey to the above named health care provider any legal or administrative claim. . .").

Other than conclusory allegations, Plaintiff does not allege an independent fiduciary relationship. Accordingly, the Court grants the motion to dismiss the fiduciary duty claim with leave to amend, should Plaintiff have other grounds to allege in good faith that plan members assigned Plaintiff their right to bring claims for fiduciary responsibilities.

**B. Claims Under the FFCRA and CARES Act**

As Plaintiff acknowledged in the complaint, there is no private right of action—either explicit or implicit—under the CARES Act, and by extension the FFCRA. (Compl. ¶¶ 92–93.) *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1016 (9th Cir. 2023) ("We therefore hold that the CARES Act does not grant a private right of action to a provider of COVID-19 diagnostic testing to enforce § 3202.").[8] Here, Plaintiff lacks

---

[8] The Ninth Circuit in *Saloojas* also addressed the lack of a private right of action in the FFCRA, stating:

> Moreover, the CARES Act was passed soon after FFCRA and expands on the requirements in § 6001(a) of FFCRA. Section 6001 of FFCRA contains enforcement and implementation provisions for the Secretary of various

standing, according to Ninth Circuit precedent. Therefore, the Court grants Defendants' motion to dismiss the FFCRA and CARES Act claims. The Court also denies leave to amend these claims because any amendment would be futile.

### C. Claims Under State Law

Plaintiff raises an assortment of state law claims against Defendants. To the extent Plaintiff seeks to recover benefits from an ERISA plan in this suit, Plaintiff's state law claims are preempted. And to the extent Plaintiff seeks to recover from MA plans, Plaintiff has failed to allege exhaustion. The Court addresses each point in turn.

#### 1. ERISA Preemption

Defendants move to dismiss Plaintiff's state law claims. First, Defendants argue that the Court lacks subject matter jurisdiction to decide the state law claims, assuming the Court dismissed the federal claims. Second, Defendants assert that the state law claims are preempted by ERISA. Finally, Defendants argue that the state law claims are both factually deficient and time-barred.

The purpose of ERISA is to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To that end, ERISA includes expansive pre-emption provisions, *see* 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981). Specifically, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that ERISA covers. 29 U.S.C. § 1144(a). A court can decide preemption of state law claims under § 1144(a) at the motion to dismiss stage. *See Wise v.*

---

> agencies—Health and Human Services, Labor, and the Treasury. FFCRA § 6001(b), (c). Again, the fact that these provisions provide an enforcement mechanism but only through the Secretaries suggests a lack of congressional intent to create a private right of action for providers.

*Saloojas, Inc. v. Aetna Health of California, Inc.*, 80 F.4th 1011, 1016 (9th Cir. 2023).

*Verizon Commc'ns*, Inc., 600 F.3d 1180, 1191 (9th Cir. 2010) (affirming a district court's dismissal of "state law claims as preempted by ERISA's broad preemption provision").

The statute preempts only those claims that "relate to" an ERISA plan. The Supreme Court has identified two categories of state law claims that relate to an ERISA plan: (1) claims that have a "reference to" an ERISA plan, and (2) claims that have an impermissible "connection with" an ERISA plan. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)). But ERISA preemption does not apply "if the state law has only a tenuous, remote, or peripheral connection with covered plans[.]" *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 984 (9th Cir. 2001) (citation omitted).

The "reference to" prong preempts state law claims that operate as "alternative enforcement mechanisms" to § 502(a)'s comprehensive civil enforcement scheme, *Dishman*, 269 F.3d at 981 (citation omitted); that "challenge the administration of ERISA plan benefits," *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 818 (9th Cir. 1992); or that are "premised on the existence of an ERISA plan" such that the plan "is essential to the claim's survival," *Depot*, 915 F.3d at 665 (citation omitted). In short, when a plaintiff's state law claim is "[i]n reality" a "challenge [to] the administration of ERISA plan benefits," it is preempted and may not proceed. *Greany*, 973 F.2d at 818.

Here, Plaintiff's state law claims are preempted because they at least have a "reference to" the ERISA plans. Plaintiff's state law claims arise out of the same facts and seek the same relief as the ERISA benefit reimbursement claim.[9] *See Stone v. Travelers Corp.*, 58 F.3d 434, 437 (9th Cir. 1995) ("Stone's claim under the California FEHA clearly relates to the ERISA plans in the most direct way; his claim is founded in the denial of benefits to which he claims he is entitled under those plans. Accordingly, his FEHA claim

---

[9] Plaintiff's state law theories are not permissible alternative or inconsistent pleadings. *See, e.g.*, *Lewis v. Activision Blizzard, Inc.*, No. C 12-1096 CW, 2012 WL 5199505, at *4 (N.D. Cal. Oct. 22, 2012) ("Thus, a state law claim that is preempted by copyright law may not be plead under the guise of an alternative or inconsistent theory of recovery."), *aff'd*, 634 F. App'x 182 (9th Cir. 2015).

is preempted."); *see also Korman v. ILWU-PMA Claims Off.*, No. 2:18-cv-07516-SVW-JPR, 2019 WL 1324021, at *15 (C.D. Cal. Mar. 19, 2019) ("To recover under a contract theory or bad faith theory would require the [c]ourt to analyze the terms of the ERISA Plan[.]"). And Plaintiff does not here allege state law claims against non-ERISA-governed plans, which Plaintiff is already adjudicating in state court.

On the face of the complaint, the state law claims seek reimbursement of benefits under an ERISA plan; in other words, Plaintiff's state law claims are alternative means to collect payment of its cash price for testing services.

- <u>California's Unfair Competition Law</u>: "Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants have engaged in unfair business practices by refusing to properly pay Quickmed for critical COVID-19 testing and services and in turn retaining monies intended to provide medical services for their members, in a manner which is unethical and contrary to public policy." (Compl. ¶ 102.)
- <u>Money Had and Received</u>: "Quickmed asserts that Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants owe it money." (Compl. ¶¶ 114, 120, 123.)
- <u>Open Book Account</u>: "Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants owe Quickmed money on the account in an amount of the difference between a reasonable rate and/or Quickmed's publicly listed cash price and the amount that Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants paid of the claims at issue, plus applicable interest and penalties." (Compl. ¶ 127.)
- <u>Account Stated</u>: "Defendant owes Quickmed money from previous financial transactions involving the payment for COVID-19 testing and services rendered for Defendant and Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants' members." (Compl. ¶¶ 131–33.)

- Promissory Estoppel: "Consequently, Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants caused Quickmed to suffer damages, for which Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants are liable, in the amount to be proven at trial, plus interest and applicable fees and/or penalties." (Compl. ¶ 142.)
- Unjust Enrichment: "As a result of Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants' actions and omissions, Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants owe Quickmed an amount to be proven at trial, plus penalties, interest, and, inter alia, attorneys' fees." (Compl. ¶ 147.)
- Breach of Implied-in-Law Contract: As set forth herein, for out-of-network COVID-19 testing and services, under SB 510, Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants have a statutory duty to pay providers at a reasonable rate, plus interest, and under the CARES Act, Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants have a statutory duty to pay providers at the providers' publicly listed cash price. (Compl. ¶¶ 149, 151–52.)
- Breach of Implied-in-Fact Contract: "Quickmed then billed Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants for performing such services, with the expectation that Quickmed would be paid." (Compl. ¶¶ 156–60.)
- Quantum Meruit: "Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants are obligated to pay Quickmed a reasonable rate, plus interest and applicable fees and/or penalties." (Compl. ¶¶ 167–69.)
- California Health & Safety Code/Insurance Code claim (Cal. Health & Safety Code §1342.2 / Ins. Code §10110.7): "Section 1342.2 (and corresponding language in California Insurance Code § 10110.7) mandates that health care service plans, such as Administrator Defendants, MA Plan Defendants, and/or General Doe Defendants,

are responsible for paying providers for out-of-network COVID-19 testing and services provided to the plan's members." (Compl. ¶¶ 171, 176–77.)

As mentioned, ERISA's preemption clause is not absolute. The Ninth Circuit has allowed, for example, the state law claim of negligent misrepresentation to survive the reach of the preemption clause, especially where there was no ERISA action pending. *See, e.g.*, *Healthcare Ally Mgmt. of Cal., LLC v. WSP USA, Inc.*, No. 24-3479, 2026 WL 2319896 (9th Cir. Aug. 11, 2026) (rejecting ERISA preemption of a negligent misrepresentation claim where the plaintiff lacked derivative standing to recover benefits under ERISA); *The Meadows v. Employers Health Insurance*, 47 F.3d 1006, 1010 (9th Cir. 1995) (rejecting ERISA preemption of a negligent misrepresentation claim where the plaintiff lacked derivative standing because the patients were not yet ERISA beneficiaries when the unlawful statement was made).[10] But reimbursement of benefits under state law indicates an alternative enforcement mechanism to ERISA's comprehensive civil enforcement scheme.

Because ERISA preempts Plaintiff's state law claims as pled, the Court does not address Defendant's secondary arguments that Plaintiff's allegations are time-barred and deficient on the merits. Accordingly, the Court grants Defendants motion to dismiss the state law claims against ERISA-governed plans. The state law claims pertaining to ERISA plans are dismissed without prejudice.

**2. Medicare Act Exhaustion**

The Medicare Act offers a federally subsidized health insurance program that covers the elderly and disabled. *See* 42 U.S.C § 1395w–26 *et seq*. An agency housed within the

---

[10] The Ninth Circuit has also considered in its analysis the potential lack of recourse. *See Healthcare Ally Mgmt. of California, LLC v. WSP USA, Inc.*, No. 24-3479, 2026 WL 2319896 (9th Cir. Aug. 11, 2026) ("In such a scenario, preemption of a negligent misrepresentation claim would leave providers with no recourse—under either state law or ERISA—when they rely on a plan's coverage representations that later prove false."); *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1031 (9th Cir. 2021) ("Holding both that Hewitt's calculations were not a fiduciary function and that state-law claims are preempted would deprive Plaintiffs of a remedy for the wrong they allege without examination of the merits of their claim. Broadly, this would be inconsistent with ERISA's purpose.").

Department of Health and Human Services, CMS, administers Medicare. *See* 42 U.S.C § 1395b–9; 42 C.F.R. § 400.200. Under Part A and Part B of the Medicare insurance program, the government pays health care providers on a fee-for-service basis. *See* 42 U.S.C § 1395w–26 *et seq*.

Part C of the Medicare insurance program, however, allows users to enroll in a private health insurance plan that contracts with the government. *See* 42 U.S.C §§ 1395w–21 to –29; 42 C.F.R. § 422 *et seq*. Part C also goes by the name: Medicare Advantage Program or MA plan. *Id*. And the private entities contracting with the government are known as Medicare Advantage Organizations ("MAO"). *Id*. The MAOs provide health care services that would have been covered under Medicare Part A and Part B. *See* 42 U.S.C. §§ 1395w–23(a)(1).

Plaintiff alleges that Defendants are MAOs that administer and pay for Medicare-covered services for their enrollees through an MA plan. (Compl. ¶¶ 17, 37.) Plaintiff identifies as a non-contract provider that was allegedly unreimbursed for its testing services.[11] (Compl. ¶ 173.) In response, Defendants argue Plaintiff has failed to allege exhaustion of administrative remedies under the Medicare Act, and thus the Court lacks jurisdiction. *See Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1140 (9th Cir. 2010) ("The issue of exhaustion bears on the district court's jurisdiction.").

The Medicare Act requires claimants to exhaust administrative remedies before bringing claims that arise under the Medicare Act in federal court.[12] *See* 42 U.S.C. § 405(h). Section 405(h)—the Medicare Act's exhaustion provision for claims "arising under" the Medicare Act—channels judicial review exclusively through 42 U.S.C. § 405(g), making

[11] Non-contract providers, also referred to as out-of-network providers, seek reimbursement from the Medicare Advantage Organization ("MAO") after providing services to a Medicare Part C enrollee; non-contract providers are reimbursed based on rates set by the Medicare Act and related regulations. *See* 42 C.F.R. § 422.214. The MAO is required to pay noncontract providers the amount the provider would have received under original Medicare. *See id*. §§ 422.100(b)(2), 422.216(a)(2).

[12] The exhaustion requirement applies even where suit is brought against an MAO. *See Glob. Rescue Jets LLC v. Kaiser Found. Health Plan, Inc.*, No. 19CV1737-L-NLS, 2020 WL 7024640, at *3 (S.D. Cal. Nov. 30, 2020), (noting that an "MA organization is a government officer or employee for purposes of section 405(h)" (citation omitted)), *aff'd*, 30 F.4th 905 (9th Cir. 2022).

it "the sole avenue for judicial review." *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984). Under this framework, "[j]udicial review of claims arising under the Medicare Act is available only after the Secretary [of Health and Human Services] renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g)[.]" *Id*. at 605. And "a 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." *Id*. at 606. Medicare payment decisions involve a multi-layer administrative review beginning with a request for payment. *See Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 914 (9th Cir. 2022).

But, as noted, the statute requires exhaustion only of claims that arise under the Medicare Act. In *Heckler*, the Supreme Court held that claims arise under Medicare for purposes of § 405(h) if "both the standing and the substantive basis for the presentation" of the claims is the Medicare Act. 466 U.S. at 614–15 (citing *Weinberger v. Salfi*, 422 U.S. 749, 760–61 (1975)). The Court also explained that claims "inextricably intertwined" with a claim for Medicare benefits arise under Medicare. *Id*. at 624.

Plaintiff does not assert a claim directly under the Medicare Act; instead, Plaintiff brings numerous state law claims. Because California law provides the substantive basis for each of Plaintiff's claims, the Court must decide whether the state law claims are "inextricably intertwined" with a claim for Medicare benefits. *See Prime Healthcare Servs., Inc. v. Humana Ins. Co*., No. CV 16-01097-BRO (JEMx), 2016 WL 6591768, at *7 (C.D. Cal. Nov. 4, 2016) ("Even a state law claim may 'arise under' the Medicare Act.").

"[W]here, at bottom, a plaintiff is complaining about the denial of Medicare benefits," the claim "arises under" the Medicare Act. *Uhm*, 620 F.3d at 1142–43; *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1114–15 (9th Cir. 2003) (concluding that Medicare reimbursements to providers should be considered a claim for benefits for exhaustion purposes).

Here, the state law claims are inextricably intertwined with the Medicare Act because they seek reimbursement for benefits owed under the statute. *See Heckler*, 466

U.S. at 614–17 (deciding that the claim was ultimately one for benefits under the Act and therefore "inextricably intertwined" with the Medicare Act). As enumerated in the ERISA preemption section above, Plaintiff fails to explain how its state law claims are anything more than an attempt to be reimbursed for under- or non-payment of Medicare benefits. For example, Plaintiff's UCL claim is not found on misrepresentations about coverage start dates; instead, it rests on the interpretation of benefits due under the MA plans. *See also Uhm*, 620 F.3d at 1143 ("The Uhms' unjust enrichment claim fares no better, as it seeks to vindicate the same alleged injury, based upon the same alleged promises, and thereby to enforce the benefit requirements of the Act via an implied contract, rather than an express one.").

And Plaintiff does not raise a separate legal theory that happens to involve a Medicare plan. *Cf. Kaiser*, 347 F.3d at 1115 (noting that plaintiffs' defamation and invasion of privacy claims were arguably not subject to the exhaustion requirement); *Prime Healthcare*, 2016 WL 6591768, at *8 (discussing that "claims do not 'arise under' the Medicare Act, when they 'at bottom [are] not seeking to recover benefits'" (citation omitted)). Thus, all claims alleged need to be exhausted.[13]

---

[13] Plaintiff responds that the Fifth Circuit's reasoning in *Caris* should apply here; the Fifth Circuit does not require exhaustion when the enrollee lacks an interest in the reimbursement dispute. *See Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 351 (5th Cir. 2024) ("When there is a complete lack of enrollee interest in a payment dispute between an MAO and a provider, as in this case, there are no administrative remedies for the provider to exhaust.").

Similar to the facts in *Caris*, the facts in this case reflect a provider seeking reimbursement from an MAO, where the enrollee apparently lacks an interest given FFCRA 6003. The Ninth Circuit has not sanctioned this exception. And Ninth Circuit precedent generally contradicts the Fifth Circuit's opinion in *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 559 (5th Cir. 2004), on which the *Caris* court rests its reasoning. *See, e.g.*, *Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan*, 210 F. Supp. 3d 1225, 1232 (C.D. Cal. 2016) ("The Ninth Circuit is at odds in this regard with the Fifth Circuit in *RenCare*[.]").

To the extent Plaintiff cites to in-circuit case law applying *RenCare*, the discussion pertains to private contract disputes. *See, e.g.*, *Liberty Dialysis-Hawaii LLC v. Kaiser Found. Health Plan, Inc.*, No. CV 17-00318 JMS-RLP, 2017 WL 4322385, at *5 (D. Haw. Sept. 28, 2017) ("Liberty's contract dispute with Kaiser Foundation will not require a determination or redetermination of any Medicare decision."); *but see Wang v. United Healthcare of Washington, Inc.*, No. 2:23-CV-01434-LK, 2025 WL 593094, at *7 (W.D. Wash. Feb. 24, 2025) ("Thus, 'there is a complete absence' of enrollee interest in this dispute; the

Because Plaintiff's claims arise under Medicare, it must proceed under 42 U.S.C. § 405(g). But Plaintiff has neither alleged that it exhausted administrative remedies nor alleged that it meets the conditions for waiver of exhaustion. *Cf. Kaiser Found. Health Plan, Inc. v. Burwell*, 147 F. Supp. 3d 897, 904 (N.D. Cal. 2015) (explaining that the plaintiff administratively exhausted by, for example, appealing to a private contractor that reviews Medicare disputes). Although Plaintiff states that it has complained of unpaid or underpaid claims to Defendants (Compl. ¶ 57), Plaintiff does not allege that it appealed to a private independent contractor pursuant to 42 C.F.R. § 422.592, requested a hearing before an administrative law judge ("ALJ") pursuant to 42 C.F.R. § 422.600, or requested review of the ALJ's decision by the Medicare Appeals Council ("Council") pursuant to 42 C.F.R. § 422.608. Given there is no final decision as required by Section 405(g), the Court cannot review Plaintiff's claims arising under the Medicare Act. *See, e.g.*, *Kaiser*, 347 F.3d at 1116 ("Because the plaintiffs have not exhausted available administrative review, the district court lacked jurisdiction to consider those of their claims that arise under Medicare, and dismissal on those claims is affirmed.").

All of Plaintiff's state law claims are inextricably intertwined with claims for benefits under Part C of the Medicare Act. They therefore "arise under" the Act. Plaintiff thus must seek administrative exhaustion before seeking recourse before this Court for reimbursement claims under the Medicare Act. For that reason, the Court grants Defendants' motions to dismiss for lack of subject matter jurisdiction over the state law claims seeking reimbursement of MA plans.

**D. Claim for Declaratory Relief**

California Code of Civil Procedure § 1060 states that a party can bring an original action for a declaration of rights or duties, and the court may make a binding declaration of the rights or duties. *See* Cal. Civ. Proc. Code § 1060. A court can grant such relief when

---

only dispute is between Dr. Wang and United over their negotiated contract."). Therefore, given Ninth Circuit precedent, the Court does not adopt the exception to exhaustion outlined in *Caris*.

there is an "actual controversy relating to the legal rights and duties of the respective parties." *Id*.

Here, given that the ERISA claim for reimbursement of benefits survives Defendants' motion to dismiss, Plaintiff presents evidence of an actual controversy. *Cf. Hackert v. Cigna Health & Life Ins. Co.*, No. 2:15-cv-1248 KJM CKD PS, 2016 WL 6611594, at *5 (E.D. Cal. Nov. 9, 2016) (granting summary judgment on a claim for declaratory relief where it is "undisputed that plaintiff is a non-participating provider, that defendants pay non-participating or out-of-network providers pursuant to the terms of the applicable insurance policy and that plaintiff was paid pursuant to those policies"). Accordingly, the Court denies Defendants' motion to dismiss the claim for declaratory relief at this stage.

### E. Request to Strike

In the alternative, Defendants' motion seeks to strike the following allegations: (1) Plaintiff's third cause of action for the FFCRA/CARES Act violation, (2) all references to Medicare claims, and (3) Plaintiff's requests for equitable relief under both its federal and state causes of action. Here, the referenced material is not wholly redundant, immaterial, impertinent, or scandalous. Thus, the Court declines to strike any portion of the complaint at this stage of litigation.

## IV. CONCLUSION

This case requires one to remember the circumstances of the COVID-19 pandemic. Congress required health plans and health insurance issuers to provide coverage of COVID-19 testing, and Plaintiff provided diagnostic services to individuals covered by ERISA-governed plans and MA plans. Now, Plaintiff alleges that Defendants have unpaid or underpaid outstanding claims for its diagnostic testing services. In this suit, Plaintiff seeks reimbursement from plans, insurers, and claim administrators of ERISA-governed and MA plans, raising federal and state law claims. As alleged, some claims cannot survive the plausibility pleading standard or fail for lack of jurisdiction.

Accordingly, upon review, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Specifically:

- The Court **DENIES** Defendants' motion to dismiss the claim for benefits under 29 U.S.C. § 1132(a)(1)(B);
- The Court **GRANTS with leave to amend** Defendants' motion to dismiss the claim for breach of fiduciary duty under § 502(a)(2);
- The Court **GRANTS without leave to amend** Defendants' motion to dismiss the claim for violation of the FFCRA and CARES Act;
- The Court **GRANTS with leave to amend** Defendants' motion to dismiss for lack of jurisdiction Plaintiff's Medicare claims, given Plaintiff's failure to exhaust;
- The Court **GRANTS with leave to amend** Defendants' motion to dismiss the state law claims, given ERISA's preemption provision;
- The Court **DENIES** Defendants' motion to dismiss the request for declaratory relief; and
- The Court **DENIES** Defendants' motion to strike.

Plaintiff does not have leave to add new claims or parties without the Court's permission. Plaintiff shall file any amended complaint on or before **September 18, 2026**. If Plaintiff declines to file an amended complaint by that deadline, then Defendants shall file an answer to the complaint by **October 2, 2026**.

**IT IS SO ORDERED.**

**DATED: August 26, 2026**

Cynthia Bashant

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**